```
         IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF ARKANSAS
                   FORT SMITH DIVISION
```

PAO & LY HER                                          PLAINTIFFS

    v.                    Civ. No. 07-2017

REGIONS FINANCIAL CORP.
d/b/a Regions Bank                                    DEFENDANT

## MEMORANDUM OPINION & ORDER

    On February 22, 2007, Plaintiffs filed a Complaint (Doc. 1) seeking money damages in excess of $5 million for losses associated with a federally guaranteed loan for purchase of a poultry farm. Plaintiffs asserted claims for fraud, constructive fraud, negligence, promissory estoppel, breach of fiduciary duty, and Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO") found at 18 U.S.C. §§ 1962(c) & (d). On May 17, 2007, the Court granted Defendant's Motion to Dismiss (Doc. 7) as to the claim of promissory estoppel, and denied it as to all other claims.

    Currently before the Court is Defendant's Motion for Summary Judgment (Doc. 49), Statement of Facts (Doc. 50), and Brief in Support (Doc. 51), Plaintiffs' Response in Opposition (Doc. 54), and Statement of Facts (Doc. 55), and Defendant's Supplement Statement of Facts (Doc. 56), Reply to Plaintiffs' Statement of Facts (Doc. 57), and Reply to Response to Motion for Summary Judgment (Doc. 58). For the reasons set forth herein, the Defendant's motion is **GRANTED** as to the RICO claims, and **DENIED** as to all other claims.

## A.   Background

On February 27, 2004, Pao Her and Ly Her, husband and wife, purchased a turkey farm located near Ozark, Arkansas, for $1,050,000. The farm was sold as an ongoing business concern, and included an existing contract for a turkey operation with ConAgra Foods, Inc. Plaintiffs invested $158,000 as a down payment for the purchase. The balance was financed by Regions in the form of two loans. One note for $692,500 ($500 was not included in the purchase of the farm) was guaranteed by the Farm Service Agency ("FSA"), and a $200,000 note was unguaranteed. (Doc. 7, Ex. 1 & 2). Both notes were secured by mortgages.

The United States through the FSA provides credit to borrowers for certain agricultural investments in the form of guaranteed loans. If banks make these loans, the banks would have some protection in the event of loss.

As part of the program, the FSA requires certain disclosures and verification of cash flow, collateral, and other financial information from the borrower and lender. On Plaintiffs' behalf, Regions completed a "Farm and Home Plan" for submission to the FSA. The plan projected the income and expenses for Plaintiffs' first year following the loan closing on both their poultry farm operation and their personal family living expenses. (Doc. 1, Ex. 3).

2

According to Plaintiffs, Jason James, Vice President and Loan Officer for Regions Bank, made a telephone call in January 2004 to Mr. Her in which he assured him of the financial viability of the farming operation under the proposed terms of the loan. (Doc. 1). On January 5, 2004, prior to the purchase of the farm by Plaintiffs, ConAgra sent a letter of intent to Mr. James indicating a range of income that Plaintiffs could expect from their farm in the following years. ConAgra had been providing and processing birds raised on that farm for many years and estimated the average income would be between $96,515 and $156,254. (Doc. 1, Ex. 4). Regions provided the FSA with a projected income from the poultry farm of $193,892 and $4,000 from pasture rental. The "Farm and Home Plan," prepared by Regions, estimated family living expenses to be $20,000 for the year.

On January 23, 2004, a Farm Loan Officer at FSA, sent a letter to Mr. James requesting additional documentation to justify the $20,000 listed for living expenses.[1] Mr. James responded with a letter via facsimile that stated the amount was more than adequate to support the family of seven, and

---

[1] The request from the FSA stated at paragraph 2:

"The 1980-25 shows seven household members. The projected family living expense shown in table F of the 431-2 shows $20,000. This amount appears to be very low for a family of seven. Additional documentation will be needed to justify using such a low amount." (Doc. 1, Ex. 6, ¶ 2)

3

suggested he had Plaintiffs' input in arriving at the figure. (Doc. 1, Ex. 5 & 6). In 2005, the first full year Plaintiffs operated the farm, they received farm income of $166,000, which was some $10,000 above the estimate provided by ConAgra in its letter of intent, but almost $30,000 below the estimate of Regions. Plaintiffs contend they have and continue to struggle to meet the loan repayment schedule because of Regions' inflated estimates.

### B.  Standard of Review

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden of proof is on the moving party to set forth the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The Court must view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574 (1986). "The non-moving party, however, must still 'present evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in [their] favor.'" *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1003-4 (8th Cir. 2005) (quoting *Gregory v. City of Rogers, Ark.*, 976 F.2d 1006, 1010 (8th Cir. 1992)). Summary judgment is appropriate where a plaintiff fails to present evidence

4

sufficient to create a jury question as to an essential element of his claim. *Turner v. Honeywell Fed. Manuf. & Tech.*, 336 F.3d 716, (8th Cir. 2003).

## C. Analysis

Plaintiffs complained of fraud, constructive fraud, negligence, breach of fiduciary duty, and a violation of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 1961, *et seq*. Defendant responded that they owed no fiduciary duty to Plaintiffs, that the Plaintiffs failed to establish a claim for fraud, constructive fraud, negligence, negligent misrepresentation, and a violation of RICO, and that the Plaintiffs were not entitled to punitive damages.

### 1. Breach of Fiduciary Duty

Plaintiffs contend Regions breached its fiduciary duty because it incorrectly completed the loan paperwork and subsequently made a loan to Plaintiffs that was impossible to repay from farm income. Regions contends a special relationship must exist between the bank and its customer for a fiduciary duty to exist, and that no such relationship was present in this case. *See Mans v. Peoples Bank of Imboden*, 340 Ark. 518, 525, 10 S.W.3d 885, 889 (2000)(finding lack of sophistication and fact that customer trusted bank did not give rise to fiduciary relationship). Regions contends that

5

the evidence does not establish a relationship between the parties other than that of debtor and creditor. Plaintiffs allege that cultural and language barriers, lack of agricultural experience, Regions' intimate involvement in Plaintiffs' business affairs, including control of the loan process and completion of the loan paperwork, and the complexity of the transaction and trust which Plaintiffs placed with Regions support a finding that a fiduciary relationship existed.

In Arkansas, emphasis is on the necessity of factual underpinnings to establish a relationship of trust and confidence between a bank and its customers which is more than a debtor/creditor relationship. *Country Corner Food and Drug, Inc. v. First State Bank and Trust Co. of Conway, Arkansas*, 332 Ark. 645, 966 S.W.2d 894 (1998)(finding lack of sophistication and alleged advice not to seek independent counsel, while possibly misleading, did not give rise to fiduciary relationship). The question is one of fact and the party claiming the existence of the confidential relationship has the burden of proving it. *Marsh v. National Bank of Commerce of El Dorado*, 37 Ark.App. 41, 822 S.W.2d 404 (1992).

Plaintiffs contend this is not a simple loan and mortgage issue, but rather involves a detailed application for a loan guaranteed by the federal government. From the facts

6

Plaintiffs have alleged, it appears a special confidence may have been placed in Regions, and that a jury could find that a fiduciary relationship did exist. Accordingly, Plaintiffs' claim for breach of fiduciary relationship survives Regions' motion for summary judgment.

### 2. Fraud

Plaintiffs contend Regions fraudulently misrepresented facts to Plaintiffs during the loan process. Defendant contends Plaintiffs have failed to establish a claim for fraud because Regions did not make a false representation of material fact, Plaintiffs did not rely on any false representation, and Regions did not intend to deceive Plaintiffs. In Arkansas, a prima facie case for fraud contains: (1) material misrepresentation of fact; (2) defendant's knowledge of false information or that it was not true; (3) defendant intended plaintiff to act on the misrepresentation; and (4) plaintiff was damaged as a result of the reliance. *Wilson v. Allen*, 810 S.W.2d 42, 42-43 (Ark. 1991).

Plaintiffs contend the focus of this case is not whether Regions missed the mark on projected incomes, but rather concerns Regions choosing to misinform Plaintiffs of the information it possessed. Plaintiffs alleged Regions deliberately inflated the projected income and provided other

7

false financial information in the Farm and Home Plan. Regions had the necessary information, according to Plaintiffs, because the letter of intent from ConAgra went directly to Regions. They contend Regions underestimated the family living expenses, and provided the estimate without seeking the family input or approval. Plaintiffs contend they were not aware of the ConAgra letter until after the closing date. Plaintiffs offer sufficient evidence to create a question of fact as to whether Regions misrepresented material facts to Plaintiffs.

Regions contends that Plaintiffs had access to the same information and therefore no duty of disclosure exists. Arkansas law provides that no duty of disclosure exists where "both parties have equal access to the knowledge." *Baskin v. Collins*, 305 Ark. 137, 143 (1991)(holding that the seller of a gas station had no duty to disclose the existence of a federal regulation governing gas storage tanks). Plaintiffs allege that Regions withheld information from them and that "they could not decipher Regions paperwork to discover the information." The Court finds that given the special circumstances and allegations regarding a fiduciary relationship, the jury could find that Regions had a duty to disclose the information to the Plaintiffs, and failure to do so could be a material misrepresentation.

8

Regions argues that the projections in the FHP are not actionable statements of fact. The Arkansas Supreme Court held that *pro forma* projections of future operating expenses of a limited partnership were incapable of supporting a fraud claim. *Golden Tee, Inc. V. Venture Golf Schools, Inc.*, 333 Ark. 253, 266-67 (1998). Additionally, the Eighth Circuit affirmed a judgment in *Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184, 1186 (8th Cir. 1996), which held that the franchisor's projections of the amount of annual sales that the franchisees could expect from their franchise did not support a fraud claim under Arkansas law. Plaintiffs respond that this case is not about a failure to accurately predict the success or failure of a business or state an accurate projection of future income, but rather a case where Regions had concrete data that they not only failed to pass on to the Plaintiffs, but of which they actively misinformed the Plaintiffs. The Court finds that the information at issue in this case includes actionable statements of fact for which a fraud claim can be supported.

Plaintiffs contend Regions intended for them to rely upon their misrepresentations, as the FSA loans required Regions to certify the feasibility of the loan in the preparation and submission of the Application for Guarantee. Plaintiffs contend they relied on Regions because the guaranteed loan

9

application process is too complex for a layman to complete. In this case, Plaintiffs contend Regions assembled and calculated all of the data for Plaintiffs and by doing so, gained their trust.  Regions contends Plaintiffs had access to the same information and were in the better position to know the needs of their own family.  The Plaintiffs have offered sufficient evidence that a jury could find that Regions intended the Plaintiffs to rely upon its misrepresentations.

Plaintiffs contend they were damaged by the loss of their life savings in this property investment, the loss of the income level they enjoyed prior to the farm purchase, and the distress the family has suffered.  The Court finds Plaintiffs have offered sufficient evidence to support the fraud claim to withstand the Defendant's motion for summary judgment.

### 3.  **Constructive Fraud**

Regions contends the claim for constructive fraud has not been established by the evidence.  Plaintiffs contend that Regions had actual intent to deceive.  In Arkansas, constructive fraud is a breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others; neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. *Technology Partners, Inc. v. Regions Bank*, 97 Ark.App. 229, _

10

\_ S.W.3d \_ \_, 2006 WL 3734604 (2006).  If the jury finds that the Plaintiff's allegations of fraud were true and that Regions breached a duty owed to the Plaintiffs, they could also find that such a breach was fraudulent because of its tendency to deceive others.  The Court finds a prima facie case for constructive fraud has been established by Plaintiffs sufficient to survive the motion for summary judgment.

**4.  Negligence**

Plaintiffs also complained of negligence and negligent misrepresentation against the Defendants.  To support such a claim, the complainant must prove the elements of duty, breach, causation, and damages.  *Hall v. Arthur*, 141 F.3d 844, 850 (8th Cir. 1998).  While causation and damages may later be disputed, Regions contends it owed no duty as to the feasibility of Plaintiffs' venture.  Plaintiffs contend that the certification requirement of the guaranteed loan application creates a duty of care.

Regions was required to certify Plaintiffs' loan in connection with the guaranteed loan application, and Regions offered its opinion on the viability of the loan and the business.  A reasonable jury could find that Regions breached its duty to properly verify information it provided to the FSA and Plaintiffs, which led to Plaintiffs' losses.  Plaintiffs have offered evidence to support a claim for negligence and it

11

survives the motion for summary judgment.

Regions contends that Arkansas does not recognize a negligent misrepresentation theory of recovery. Plaintiffs allege that the Eighth Circuit has concluded that Arkansas would not reject fraud liability for "knowingly ignorant misrepresentations." *Receivables Purchasing Co. V. Engineering and Professional Services, Inc.,* 510 F.3d 840, 843 (8th Cir. 2008). Plaintiffs alleged that Regions made knowingly ignorant misrepresentations which they intended Plaintiffs to rely upon and that Plaintiffs did rely on to their detriment. Plaintiffs have offered sufficient evidence to support a claim for negligent misrepresentation to withstand a motion for summary judgment.

### 5. RICO

Plaintiffs alleged two causes of action for violations of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), under 18 U.S.C. §§ 1962(c) & (d). Regions contends Plaintiffs failed to demonstrate an enterprise, a racketeering activity, a pattern of racketeering activity, and an injury caused by a racketeering activity. For a § 1962(c) claim, a RICO plaintiff must prove the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Id*. Conspiracy to commit the above is a violation of 18 U.S.C. § 1962(d). Mail and wire fraud actionable under

12

18 U.S.C. § 1341 qualify as an act of racketeering for purposes of 18 U.S.C. § 1961(1).

The stated purpose behind RICO is to curb the infiltration of legitimate business organizations by racketeers. *United States v. Turkette*, 452 U.S. 576, 591 (1981). Although the initial aim may have been to thwart organized crime, RICO also imposes civil liability on other types of organizations. *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986 (8th Cir. 1989).

Plaintiffs contend Regions committed fraud by mail and wire, on multiple dates and times, and alleged the dates, names, and description of the misrepresentations. They contend Regions artificially inflated the cost and income of the poultry farms and that they have been damaged by assurances of income that were lower than possible and not properly verified. Plaintiffs allege they agreed to a loan repayment structure larger than they could repay because of statements and representations made by Regions, such as reporting to the FSA that the family living expenses would be only $20,000 annually. Plaintiff's allege Regions conspired with Sheer Agri Services, Inc. ("Sheer"), James B. Graham ("Graham"), and others not named, to profit from loan packaging and appraising deals for customers. Plaintiffs contend the association of Regions with others creates a

13

structure separate and apart from Regions Financial Corporation.

Regions contends Plaintiffs have not shown proof of a conspiracy because they added nothing to the § 1962(c) claim. Plaintiffs alleged Regions agreed to the commission of the predicate acts, demonstrated an enterprise broader than Regions itself, and identified the loan packager and appraiser involved in this and similar claims.

The Eighth Circuit has identified "three characteristics possessed by all RICO enterprises: (1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering activity." *Handeen v. Lemaire,* 112 F.3d 1339, 1351 (8th Cir. 1997). Regions contends Plaintiffs failed to offer evidence of continuity of structure and personnel in the alleged enterprise of Regions, Scheer, and Graham to package and obtain FSA-guaranteed loans. Plaintiffs contend that James, Scheer, and Graham each profited from the activity, and were partners in dozens or possibly hundreds of loan applications which were prepared in the same method. In *Handeen v. Lemaire, supra,* the Eighth Circuit held:

> "continuity of structure exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc, basis. The continuity-of-personnel element involves a closely related inquiry, in which the

14

>  determinative factor is whether the associational ties of those charged with a RICO violation amount to an organizational pattern or system of authority." 112 F.3d at 1351.

The Court finds that Plaintiffs have failed to offer evidence of continuity of structure or personnel in the alleged enterprise of Regions, Sheer, and Graham to package and obtain FSA-guaranteed loans as required for a RICO claim. The Plaintiffs have not shown that Regions, Sheer, and Graham worked together as to create an "organizational pattern or system of authority" directed by Regions.  The Plaintiffs rely on the fact that Regions frequently used the same appraiser and loan preparer for its FSA-guaranteed loans.  However, James testified that he chose Graham to appraise the Plaintiff's property because Graham had previously appraised it and, therefore, it would save the Plaintiffs money.  James testified that he chose to use Sheer to prepare the Plaintiff's loan package because of Sheer's qualifications and experience.  James used Sheer on all of his FSA-guaranteed loans, but he was not directed to do so by Regions. (Statement, ¶s 5-7, 10, 12)  The evidence demonstrates that Regions, Sheer and Graham had an ongoing business relationship with each party working to perform a legitimate business purpose.  The Plaintiffs have failed to offer proof of a RICO enterprise, as required to raise a RICO claim.  As such, the Court finds Regions' motion for summary judgment should be

15

granted as to the RICO claims.

### 6. Punitive Damages

Regions contends that the Plaintiffs are not entitled to punitive damages. The Civil Justice Reform Act of 2003, codified in part as Ark. Code Ann. §§ 16-55-201 - 16-55-220, governs the procedure for awarding punitive damages for state-law claims accruing on or after March 24, 2003. Ark. Code Ann. § 16-55-220(a). In order to recover punitive damages, the Plaintiff must prove by clear and convincing evidence either or both of the following aggravating factors: (1) the defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; and (2) the defendant intentionally pursued a course of conduct for the purpose of causing injury or damage. Ark. Code Ann. § 16-55-206.

Regions argue that Plaintiffs can not prove either of these factors by clear and convincing evidence. Plaintiffs respond that the evidence demonstrates that Regions knew or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in injury or damage and they continued the conduct in reckless

16

disregard of the consequences, from which malice may be inferred. Plaintiffs allege that the evidence is clear and convincing that James assured Plaintiffs that the property would produce sufficient cash flow, that Sheer departed from FSA regulations by omitting income data from the loan application, that Regions falsified income and expense numbers, and that because of these actions, Plaintiffs purchased a farm that they could not afford. The Court finds that the Plaintiffs' evidence on punitive damages is sufficient to survive summary judgment at this stage.

**D. Conclusion**

Accordingly, the Defendant's Motion for Summary Judgment is **GRANTED** as to the RICO claims, and **DENIED** as to all other claims.

IT IS SO ORDERED this 9th day of April, 2008.

*/s/ Robert T. Dawson*
HONORABLE ROBERT T. DAWSON
UNITED STATES DISTRICT JUDGE

17

**AO72A**
**(Rev. 8/82)**